The next case today, number 231963, United States v. Carlos Vazquez-Narvaez. Will counsel for the appellant please come up and introduce yourself on the record to the podium? Good morning again. Greg Conner for the government. As appellant, may I please reserve two minutes for rebuttal? Okay. You may. And before the clock starts ticking, let me just pose a general question that we'll save you some time. In the past, this court has affirmed many, many, I say many, the jurisprudence all over, cases where there's an upward variance, the government defends the upward variance, and it's kind of similar. Here it's about, I think it's 50-something months, whatever the downward variance is. But why is this different from the cases where the government defends an upward variance, even if it's correspond to, you know, determined by the court? And again, to me it's, isn't this a golf scenario going down? Go ahead. With that in mind, we'll probably ask more questions. Okay. Thank you. And I think that we'll get to the crux of all this. And answer it whenever you need to answer it, but I just want to pose the question, not cut your time. I appreciate that. And to answer your question, we do appeal rarely, and as I'll get to when I address the merits of the case, it's based on our belief that this looks overwhelmingly similar to the Crespo-Rios case, where this court said that the explanation given there was not sufficient. So to get into the case itself, as I mentioned, in Crespo-Rios this court criticized the lacking and implausible sentencing rationale for the child pornography offense in light of how serious the offense was and the impact on the child victims. We view this as having similar failings, so we think that Crespo-Rios should dictate the outcome. Counsel, in Crespo-Rios, I guess I'm asking you about the thinking that went into what you're asking us to do if we send it back. In Crespo-Rios, the court specifically sent it back, yes, for a more thorough explanation and resentencing. The court explicitly said that. You don't ask for that here. You just ask that we send it back for a more adequate explanation. Are you assuming that the court, in light of that more thorough explanation, could choose to resentence? Are you just assuming that? Because you're not asking us to specify that, are you? I disagree with that characterization. Our conclusion quotes Crespo-Rios. We are asking for the same remand and resentencing that took place there. And as far as the possibilities of what could take place, and Judge Helpe alluded to this as far as the government's normal position in sentencing appeals, we are under the view that a district court has the maturity to look at a case on remand with fresh eyes, and we would address the merits of our position below, hopefully with instructions from this court to pay heed to Crespo-Rios and the instructions this court gave there. So essentially, yes, I acknowledge that there's a possibility for either the same sentence to be imposed or for the district court judge to reconsider. That's part of what a remand for resentencing is. Now, as far as the, in our view, overwhelming merits or overwhelming similarity between the cases, this court said in Crespo-Rios that the district court improperly focused exclusively on rehabilitation and a low risk of recidivism at the exclusion of the other factors, failing to explain why it had considered those factors. Didn't Judge Vélez-Livet below consider those? She mentioned specifically that she did not want to undermine the seriousness of the offense, but she's definitely considering that. She's reviewed the sentence report. There's an indicia that she has considered that, and she's weighing the definitely aggravating factors, but she's giving more weight here to the mitigating factors. Respectfully, no. There's no indication that the district court judge weighed those other 3553A factors, and what this court said in Crespo-Rios is exactly what you identified, Judge Helpe. A lone comment that a case was very serious does not suffice for explaining why the sentence was appropriate in light of those other 3553A factors. So again, we view this as overwhelmingly similar to Crespo-Rios. The same exact thing happened there. But, counsel, haven't we said repeatedly, though, that a district court doesn't have to tick through every single factor for the explanation to be significant or enough? And here, when I read what the district court said, there was a rationale. I mean, the district court said that the defendant had shown perfect compliance with very strict pretrial conditions, that he had immediately accepted responsibility for his actions, and she found him to be really remorseful. That was also on the statement of reasons, that he had a clean social history, no criminal history, no substance abuse issues, strong family support, et cetera. So the court explained that those were all the reasons why it decided to give this seven years of supervised release. And since we say that you don't have to literally tick through every single factor, why wasn't that enough? Because the facts here are quite different from the facts in Crespo-Rios. I think you would agree. So in the context of this case, why wasn't that enough? Okay. A few points because, respectfully, I would not agree with that. So a few – the overarching concern we have is that merely – if this court accepted our premise, remanded for a more thorough explanation, merely elaborating is not going to cure all of the problems with the district court's rationale here because many, all of them, in our view, did not make sense. That's why we're raising this as a plausibility challenge. So I do want to go through it one by one. Let me ask you in your plausibility challenge, are you suggesting that this individual has to do some prison time, regardless of whatever the sentence is, but should – it seems to me what you're saying is there shouldn't be a non-prison sentence. There should be a prison sentence, correct? I'm saying based on the reasons given, they did not suffice to explain the maximum possible downward variance. And this court always says that the extent of the explanation has to be proportionate to the length of the – Let me ask. In calculating the guidelines, Judge, whether they made those calculations at the outset based on the consensus report, there's a lot of the factors, the aggravating factors, they're considered in the guidelines. So she is considering these factors by calculating the guidelines, correct? No. And let me go into her explanation because none of it explains why he is out of the mine run. She talks about the absence of other offenses. As we mentioned in our brief, the fact that there aren't other offenses is not a reason to maximally vary. And even if that was a reason, there was another offense with a statutory minimum. Then she talks about prison. She doesn't think would do anything for this defendant or for society. Other than being the antithesis of our federal system, that's exactly what Prespo-Rios says not to do, that you have to consider deterrence both for the individual and general deterrence. So you can't say that statement is plausible or consistent with Prespo-Rios. Cooperation, he received three points for acceptance of responsibility. He was caught red-handed, so of course he's going to say the devices are his. It would be futile not to. And again, nothing in that explains why he is so outside of the mine run as to maximally vary. And finally, the idea of interrupting treatment. I would look at the specific language the district court uses because she appears to think that there isn't treatment in prison. At the very least, she's overstating the fact that he will receive a different treatment provider. And if you look at the change of plea hearing, he mentions that he has already had that transition. He went from supposedly a treater he sought on his own to a court-provided treater. So he is already receiving that. And then at the sentencing hearing, he mentions that he believes he's going to prison and that he's going to continue the treatment in prison. Counsel, let me ask you. You could argue, the government is not precluded from arguing, that this is a substantially unreasonable sentence. Is that correct? You can argue that, can't you? I believe we can, but just to be clear, our brief is consistent with the language of Prespo-Rios, which doesn't change that final sentence. Everything you're saying, and this is not being critical at all, everything you said in your brief and what you're saying here is you think, to use one of the elements of the substantive unreasonable analysis, you think this is an indefensible result. Why did you not make a substantive unreasonableness argument? Because at the heart of that argument is the claim that it is an indefensible result and, in addition, it doesn't offer a plausible rationale. But why are you not arguing substantive unreasonableness? That seems to basically be what you're saying here. This is an indefensible sentence. That's your view, right? It's indefensible? We are not reaching that final conclusion because Prespo-Rios does not. And just to briefly explain our position throughout. Prespo-Rios is important. It's not the Bible. Why do you think that decision precludes you from making a substantive unreasonableness argument? I think both that everything we argue is consistent with that case. I respectfully think the cases are overwhelmingly similar because this court said that the focus of what the district court did wrong was its explanation for a child pornography offense. The minimal difference in the facts is that there was an attempted contact in that case. If you look at the opinion as a whole, that's a small fraction of the opinion. The gist of it is— It was much more than an attempted contact. I don't need to recite all the facts, but it was trying to encourage someone that the defendant in Prespo-Rios thought was a minor. It turned out it was an undercover officer. But to engage in all sorts of conduct and send information to him and pictures, I mean, it went on and on. It was not like here, which was a viewing of pornography. And I'm not trying to minimize the harm of viewing child pornography, but to me the facts were quite different. And so you have to look at the explanation in light of the underlying facts of the case. Sure, Judge Rickleman, and I would just encourage you to take a bird's eye view of Prespo-Rios. There are two, maybe three sentences that address what you just addressed. The rest of the opinion is about the implausibility of the rationale in light of the serious child pornography possession offense. It's about the harm, the market, that it's not a victimless crime, and what the district court did in focusing exclusively on rehabilitation, which again is the pre-sentence treatment efforts here, at the exclusion of all the other factors. Let me also ask you, district judges in the District of Puerto Rico, and I think statistically every year they see, and based on my experience, at least 30 to 70 child pornography cases a year. There's a lot of them. They sentence constantly. Sometimes they impose tough sentences. Other times tougher sentences than just possession cases. And every once in a while there is a non-prison sentence. So shouldn't there be deference to district judges who know these type of crimes, they see what's happening, and they can readily differentiate or see, well, this person may have something. Because, again, we're not talking about a judge who every single case is probation or time served, time served, time served. Judge Bailiff-Durek has sentenced tough sentences, and this is one exception. She's seen the case. She's seen the facts of the case. Shouldn't there be in that procedural analysis deference to that also? Of course there's always deference in sentencing decisions. However, one, she both acknowledged that that was her first child pornography sentencing, and two, that doesn't mean that she doesn't, doesn't mean that she is excused from providing a plausible rationale. I've explained why the four reasons she does give are implausible, and I have yet to hear or yet to see from Vasquez how any of those reasons are permissible under CRESPO-Rios. Let's hear from Vasquez to see. You're going to have rebuttal. Okay, thank you. Good morning, Your Honors. Peter John Pochock for the defendant, happily, and may I please have a word? Please proceed. Your Honors, a fact that did not mention by the counsel is about this transpired on the day of the defendant's arrest. He was not caught red-handed, first of all. It was the result of a search warrant. He was apprehended. His house was searched. Computers and iPads were seized. He decided, he decided to corroborate with the agents at the get-go. He sat with them, admitted the facts of the case, and later on, after his computers and iPads were searched, he was finally indicted. Once finally indicted, he immediately asked the government to enter a plea agreement with him. And that was it. We entered a plea agreement. We agreed, correct, to a 48-month incarceration. I have to candidly say that it was the first time, as the judge's first case in a pornography case, in a sentence, it was my first time where a judge issues a downward departure. I was surprised that that's what happened. But let me mention also, this is not a judge who has never seen a child pornography case. She was a magistrate judge for 18 years, so she's taken probably hundreds of these pleas, maybe not sentenced. Right. She's an experienced magistrate. I have to agree. It's not like an attorney who just did civil practice forever and all of a sudden engaged in a child pornography sentence. Well, counsel, I mean, this is really a pretty extraordinary sentence. You just mentioned there's a plea agreement, sentencing recommendation of 48 months. Both parties agreed to it. I'm sorry? Both parties agreed to it. Yes, exactly. And then the guideline sentence would have been in the range of 51 months. Correct. And the district court imposes a sentence of time served, which turns out to be about, what, 21 days? Is that right? That is correct. I mean, by any measure, that's an extraordinary variance. Wouldn't you agree? Yes, I have to agree. But also, she stated for the record, although the party suggested that range, it was greater than necessary to fulfill the purpose of these sentencing factors. But when you have that extraordinary variance, shouldn't we be particularly scrupulous in how we review the rationale for it? The prosecution has talked about implausible rationales, pointing out that the district court said, well, it could have been worse. He could have subjected these children to sexual abuse. He could have recorded the videos himself. How can you, when the videos themselves are so awful and they involve the exploitation of children, how can you give the defendant credit for not actually abusing the children himself or making the videos himself? That does seem to me to be an implausible rationale. Well, the videos were not made by this gentleman. No, I know that. And he's given credit for that, that he didn't make them. Right. And he did not come into contact with any minor whatsoever as well. And second, immediately after he was indicted, on his own initiative, he started receiving psychological treatment, no child pornography. That was also considered by the court. What do you mean on his own initiative? Nobody told him to look for any help. So he went to a psychiatrist and started looking for help. Isn't that one of the conditions of pretrial supervision, that you're going to – maybe he had his own psychiatrist, but that's a – I've never seen a case where that's not a condition. I cannot recall that that was a condition, but I do remember in his interview that he made it very clear to the probation office. But he's presently on psychiatric help. Counsel, just to follow up on what Judge Lopez is asking, what we have to understand is how this case falls outside of the mine run. And I'm just trying to understand what about it, in your view, falls outside of the mine run. The government has raised the point that the district court might have been wrong in saying that there would be an interruption of treatment, and that was something that the court focused on fairly heavily. So other than the fact that she found that he had been in perfect compliance with all of the pretrial conditions, which she viewed as very intensive and he had followed everyone to a T, she said other than that, what puts this case outside of the mine run case of people who are in possession of child pornography? Well, the court considered treatment was going to be interrupted if he incarcerated him. Right, but the government is saying that that's incorrect. So that's why I'm bringing it up. I don't agree with the court on it. I don't agree with the government on this one. Can you explain why? Because the government says that he had already switched to a state-based provider, and there would have been no interruption. Well, this is something I got from the defendant himself when he was incarcerated. For the 21 days he was incarcerated, that he was not going to get any treatment while incarcerated. And that's the thing he gave me, that information, and that's the one I'm relaying today. So you can't, otherwise you can't respond directly to what the government says. I can't respond directly to that question. So other than the treatment and his compliance with the pretrial conditions, is there anything else that puts this case outside of the mine run? Nothing more to add. Anything else, Mr. O'Rourke? Nothing else. Okay, thank you very much. Mr. Conner, you have your two rebuttal minutes. And please identify, re-identify yourself. Thank you, Judge Helke. Again, Greg Conner for the government as appellant. And before your minute, I'll give you time to ask you a question. Why is this different from a Gaul scenario? I believe in Gaul it was maybe 30 months for a non-prison sentence, but we're talking here maybe 50 months. So where is the difference between here and Gaul? Go ahead. I think Gaul is helpful to the government in that it says the explanation should be proportionate to the amount of the variance. I'm forgetting the reasons the district court gave in that case, but what this court does in other contexts, say machine gun contexts, is look at the rationale for the appeal and compare it to its case law regarding machine gun sentences. We're asking this court to do the same thing. This is a child pornography possession case, Prespo Rios was as well, and we think the explanations given should be analogized in that regard. But just to briefly conclude, the district court did nothing in this case that would meaningfully differentiate Vasquez from any other defendant in his situation. We refer the court to the Morris case that said essentially everything Vasquez did here is typical, and certainly the district court judge didn't provide anything that would explain the maximum possible variance. And briefly, he mentioned that his client shared he didn't receive treatment. His client himself said at the sentencing hearing that he was planning on receiving treatment, and there's no challenge to the case law we cited that said the BOP itself will provide that during a term of incarceration. So it's simply wrong to say that he would not receive the type of child sexual predator treatment that he would be doing in prison. Any further questions? Thank you, Mr. Conner.